**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JANI-KING OF MIAMI, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | **CIVIL ACTION NO.** |
| | § | |
| | § | **3:23-cv-00389-B** |
| **VS.** | § | |
| | § | |
| **RUSSELL LEICHT, MELODEE LEICHT,** | § | |
| **JOHN DARCY, AND PREMIER PROPERTIES** | § | |
| **CLEANING SERVICES, LLC,** | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT
## AND APPLICATION FOR INJUNCTIVE RELIEF

Plaintiff Jani-King of Miami, Inc. ("Jani-King") files this First Amended Complaint and Application for Injunctive Relief against Defendants Premier Properties Cleaning Services, LLC, ("Premier") Russell Leicht, Melodee Leicht, and John Darcy ("Darcy") (collectively, "Defendants").

### PARTIES

1.      Plaintiff Jani-King of Miami, Inc. is a Texas corporation with its principal place of business in Dallas County, Texas.

2.      Defendant Premier Properties Cleaning Services, LLC is a North Carolina limited liability company, with its principal place of business in Catawba County, North Carolina. Defendant Russell Leicht is an individual residing in Lincoln County, North Carolina. Defendant Melodee Leicht is an individual residing in Lincoln County, North Carolina. Defendant John Darcy is an individual residing in Broward County, Florida. Jani-King has requested that all defendants waive service pursuant to Rule 4.

<u>**S**UMMARY</u>

3.       Jani-King and the Defendants are bound by a Franchise Agreement that contains noncompetition provisions restricting Defendants from operating a competing commercial cleaning business, during the term of the agreement and for two years thereafter, in Broward, Dade, and Palm Beach Counties in Florida (the "<u>Territory</u>").  Defendants have breached the Franchise Agreement by conducting commercial cleaning activities and establishing new business entities to compete directly against Jani-King in the Territory and have misappropriated Jani-King's trade secrets thereby violating the Texas Uniform Trade Secrets Act ("<u>TUTSA</u>") the Defend Trade Secrets Act ("<u>DTSA</u>").  Jani-King seeks an injunction restraining Defendants' from violating the Franchise Agreement's restrictive covenants and ordering the return Jani-King's trade secrets, confidential information, and property.  Jani-King seeks an injunction: (1) restraining Defendants from violating the Franchise Agreement's restrictive covenants; and (2) restraining Defendants from using or disclosing Jani-King's trade secrets; and (3) ordering Defendants return Jani-King's trade secrets, confidential information, and property.

<u>**B**ACKGROUND **F**ACTS</u>

*Jani-King's Franchise-Based Business Model*

4.       The Jani-King brand was founded in 1969, and today Jani-King International, Inc. ("<u>Jani-King International</u>")[1] is the world's leading commercial cleaning franchise company with more than 6,500 authorized franchise owners worldwide, and over 120 support offices in 10 countries.  Through this global network, Jani-King International delivers a superior commercial cleaning program to a wide range of customers through its franchise owners.

---

[1] Jani-King International, Inc. is the parent company of Plaintiff Jani-King of Miami, Inc.

5.      Jani-King provides its franchisees with its know-how, trade secrets, proprietary information, including franchisee training manuals and forms, Jani-King's client lists, the pricing and financial details of the contractual relationships between Jani-King and its customers, customer requirements and specifications, and access to Jani-King's proprietary marks, confidential information, and trade secrets (the "Jani-King System").

6.      Jani-King has expended immeasurable resources developing the information and materials disclosed to its franchisees through the Jani-King System. This know-how and confidential information is critical to Jani-King's success, and representative of fifty-four years of experience in the commercial cleaning franchising industry.  Protecting access to, use of, and disclosure of the Jani-King System—which includes Jani-King's protectable trade secrets—is vital to Jani-King's survival, as is preventing improper unfair competition by the principals of its franchisees.

*Defendants' Franchise Agreement with Jani-King*

7.      In 2012, Russell and Melodee Leicht (together, "the Leichts"), proactively sought out a franchise relationship with Jani-King. Russell Leicht engaged in extensive communications with Jani-King, negotiating deal terms and pushing to obtain a license to use the Jani-King System. He spent over six months working toward obtaining the Franchise Agreement.  His efforts culminated in he and his wife, Melodee Leicht traveling to Dallas to meet with Jani-King's then-CEO, Jerry Crawford.[2] Their trip was memorialized in correspondence titled "**Dallas Trip**" they sent to Crawford on February 4, 2013—just days after the execution of the Franchise Agreement. The correspondence details the Leichts' high level of engagement in Dallas, including their acceptance of a personal loan to help start their Jani-King franchise:

---

[2] *See* ECF No.7 at APP003 (Ayres Decl. at ¶ 4).

From:       Russ Leicht <rlse1@live.com>
Sent:       Monday, February 4, 2013 11:52 AM
To:         jcrawford@janiking.com
Subject:    Dallas Trip

Jerry,

I can not begin to express the gratitude Melodee and I have for the way we were treated on our recent trip to
Dallas. The Jani-King family of employees were gracious and hospitable, it is evident the culture you have
created is infectious. We are extremely grateful to be considered part of your organization and look forward to
growing our relationship over time.

Please thank Mary for taking time from her schedule to spend with us, Melodee and I are in awe of what an
incredible woman you have at your side. Mary is the first woman in many years that I have met that made
such a profound impression on Melodee. It was a real pleasure to see Melodee smile in a way that I haven't
seen in a while.

Your generosity towards our family in our time of need will never be forgotten. We have decided to accept
your loan offer of $5,000 to help us get through these trying times. We will repay the loan as soon as possible,
hopefully upon selling our house in the near future or upon securing our deal with Hard Rock. At the very
latest we will pay it back from our portion of the proceeds we receive from our Jani-King profits with one of
our partners.

If Jani-King decides to hire someone to oversee the procurement of Federal Set-Aside Contracts, I would ask
to be considered for the position. I am spending all of my time devoted to learning as much as I can about the
procedures and requirements to be competitive in that market and Travis is guiding me through the step by
step process as we develop our business plan for the Disabled Service Member Owned (DSMO) Jani-King
franchise, Praetorian Industrial Services, LLC. I believe I would be an asset to Jani-King.

Thank you again for everything you have done for our family.

Our Warmest Regards,

**Russell Leicht Jr.**
**Melodee Leicht**

[3]

8.      Russell Leicht then directed the creation of Seminole Commercial Cleaning and Maintenance Services of Florida, LLC ("Seminole Cleaning"), the counterparty to the Franchise Agreement. Seminole Cleaning is owned by its members, Seminole Tribe of Florida, Inc. (owning 51%) and Premier (owning 49%).[4]  The Leichts and Darcy were heavily involved in the franchise's operations,[5] and Russell Leicht and Darcy were in extensive communication with Jani-King's Dallas-based headquarters regarding the franchise, billing, operational issues, and finances.[6]

9.      The Franchise Agreement granted Seminole Cleaning a license to use the Jani-King System, including its intellectual property, trade secrets, proprietary training, confidential

---

[3] *Id.* at APP007.

[4] *Id.* at APP040. Premier is owned by Melodee Leicht (75.5%) and John Darcy (24.5%). *Id.*

[5] *Id. at* APP004 (Ayres Decl. at ¶ 7).

[6] *See id; see also id.* at APP022-26.

information, and logistical support running the franchise.[7]  In return, Seminole Cleaning and its "Principals"—including each Defendant—agreed to the terms of the Franchise Agreement, including noncompetition and trade secret protections.[8]

10.     The Franchise Agreement expressly defines "Principals" as the Franchisee's "**owners, shareholders, members, officers, directors, and managers**."  *Id.* at § 4.2.3.  Each of the Defendants is a Principal and is therefore bound by the Franchise Agreement:

> ➢     Premier is a member of Seminole Cleaning;

> ➢     Russell Leicht is a manager of Seminole Cleaning;[9]

> ➢     John Darcy is a manager of Seminole Cleaning; and[10]

> ➢     Melodee Leicht is an owner/shareholder and manager of Seminole Cleaning.[11]

11.     Further, Jani-King and Seminole Cleaning signed an Amendment on May 1, 2021, that "**ratified and affirmed in all respects**" the Franchise Agreement and further clarified that any reference to the Franchise Agreement included the Amendment.  Premier, acting through Russell Leicht, signed the Amendment.  Similarly, Jani-King and Seminole Cleaning executed a Business Management and Operations Agreement ("Management Agreement") in conjunction with and incorporating the Franchise Agreement. The Management Agreement was signed by Melodee Leicht.

---

[7] *See e.g.,* ECF No. 1-4 at p.24, § 1.1.

[8] *See e.g., id.* at p.41, § 5.2 ("In consideration for the valuable initial and ongoing specialized training, and Confidential Information described above, **Franchisee and all of the Principals agree as follows**[.]") (emphasis added).

[9] Seminole Cleaning's "Manager's Certificate" was signed by Russ Leicht as "Manager." ECF No. 1-4 at Ex. B (p. 61).

[10] On January 12, 2023, Seminole Cleaning filed a reinstatement with the Florida Secretary of State. That reinstatement was signed by John Darcy as "Manager." *Id.* at Ex. C (p. 63).

[11] *See id.* at Ex. D (p. 65).



12.    The Franchise Agreement was for a term of ten years, running from February 1, 2013 through 2023.[13] During this period, Jani-King provided Defendants with licenses to use its intellectual property, access to its Confidential Information,[14] Proprietary Marks,[15] and the Jani-King System, which includes trade secret information (including, but not limited to, customer lists, franchisee lists, sales leads, sales training and manuals, lead sources, bidding worksheets and guidelines, marketing tools, training sales techniques and strategies, contract terms, and cost and

---

[12] *See* ECF No. 7 at APP008-011 & APP012-20

[13] *See* ECF No. 1-4 at p. 46, § 9.1.

[14] The Franchise Agreement defines "Confidential Information" as confidential information, programs, devices, methods, techniques, and processes which are not generally known to the public pertaining to franchising, promotion, marketing, operation, and management of Jani-King's business, including, but not limited to, the Jani-King System, which includes but is not limited to information regarding the operational, sales, promotional methods and techniques, and marketing methods and techniques of Jani-King and Jani-King's program. Such information includes, but is not limited to: (a) Jani-King's DVDs, manuals, forms, the information contained and compiled therein, and the updates and memoranda thereto; (b) names of Jani-King's agents, suppliers, and customers, and their requirements, specifications, and preferences; (c) the contractual arrangements between Jani-King and its agents, suppliers, and customers; (d) the financial details (including but not limited to credit and discount terms) of Jani-King's relationship with its agents, supplies, or customers; (e) the names of prospective Jani-King customers and their requirements, specifications, and preferences; (f) information concerning the remuneration paid by Jani-King to its employees; (g) Jani-King's accounting software; (h) information concerning and presented at Jani-King meetings; (i) security and access information; (j) information provided through initial and ongoing specialized training; and (k) Jani-King's business plans and strategies.

[15] The Franchise Agreement defines Jani-King's "Proprietary Marks" as all trademarks, trade names, trade dress, service marks, slogans, and logos, including, but not limited to, the mark "Jani-King," the mark "The King of Clean" or any other trademark or service mark.

pricing information).   The Confidential Information, Jani-King System, and trade secret information comprise Jani-King's "<u>Trade Secrets</u>."[16]

13.    Jani-King also provided logistical support from its Dallas-based headquarters including billing, accounting, technology-based services, and the provision of management services; and otherwise fulfilled its obligations under the Franchise Agreement.[17] Additionally, Jani-King provided operational support for Seminole Cleaning, including through key personnel such as Ruben Garcia, who provided day-to-day operational assistance for Seminole Cleaning.[18]

14.    Jani-King's Trade Secrets, including the Confidential Information, Proprietary Marks, Jani-King System, and supporting personnel and management services proved very effective.   During the agreement's term, Seminole Cleaning generated at least $25,000,000 in revenue and serviced at least the following accounts: (1) Trial Field Office – Seminole; (2) Big Cypress Seminole; (3) Seminole Warehouse; (4) Trading Post Gas Station; (5) Seminole Coconut Creek Casino; (6) Seminole Brighton Reservation; (7) Seminole Hollywood Reservation; (8) Hollywood Reservation Porter; (9) Seminole Big Cypress Porters; Brighton Reservation Porters; (10) Seminole Immokalee Reservation; (11) Seminole Immokalee Porters; (12) Seminole Hard Rock Parking; (13) High Glass Cleaning at Coconut Creek Casino; (14) Myers Mansion; (15) High Glass Cleaning – BOL; (16) Reservation Pressure Cleaning; and (17) Seminole Classic Casino (collectively, the "<u>Jani-King Accounts</u>").[19]

---

[16] *See* TEX. CIV. PRAC. & REM. CODE § 134A.002(6); 18 U.S.C. § 1839(3).

[17] *See* ECF No. 7 at APP003 (Ayres Decl. at ¶ 5).

[18] *See id.* (Ayres Decl. at ¶ 6).

[19] *See id.* at APP004 *(*Ayres Decl. at ¶ 9); *see also* ECF No. 1-4 at p.71.

*The Franchise Agreement's Noncompetition Requirements & Trade Secret Protections*

15.    The Franchise Agreement contains noncompetition provisions restricting Defendants from operating a competing business and soliciting Jani-King's customers.  It also contains provisions designed to protect Jani-King's Trade Secrets from unauthorized disclosure. Seminole Cleaning and "all of the Principals" agreed that for a period of two years after the "expiration or termination" of the Franchise Agreement, they would not:

- Own, maintain, operate, engage in, or have any interest in any business which is directly competitive with the franchised business within the territory of the agreement;

- Divert or attempt to divert to any competitor any business or customer of the Franchise or any other Jani-King franchisee;

- Directly or indirectly do any act injurious or prejudicial to the goodwill associated with Jani-King's trademarks, trade names, or the Jani-King franchise program; and,

- Employ or seek to employ or induce any person employed or employed within the previous twelve (12) months by Jani-King or its affiliated companies.[20]

Each of the Defendants is bound by these noncompetition provisions from February 1, 2023, through February 1, 2025 (the "Restricted Period").

*Defendants' Breach of the Noncompetition Clauses*

16.    Towards the end of the Franchise Agreement's term, the Leichts began complaining of costs associated with Jani-King's business model and demanded concessions related to royalties and fees. While Jani-King agreed to modify some fees, it could not agree to modify its standard royalty fee. Russell Leicht then sought to control all communication with the Jani-King Accounts regarding the future of the business and refused to engage in substantive conversations about renewing the franchise with Jani-King.

---

[20] ECF No. 1-4 at p.41-42, § 5.2.3.

4874-7009-9286.1

17.     Despite Jani-King's efforts to work with the Defendants, on January 10, 2023, Darcy advised Jani-King that he and his business partners would not be renewing the Franchise Agreement.  Instead, Darcy declared that "As of February 1st[,] 2023 **all janitorial contracts that are with Seminole Gaming and Seminole Tribe are being brought in house**." (emphasis added).[21] After receiving Darcy's email, Jani-King reached out to Russell Leicht to determine if the relationship could be repaired.[22]  Leicht, however, avoided substantive discussions of the non-renewal or Defendants' plans to operate a competing business in the Territory.[23]  Receiving no response, Jani-King began to investigate the situation.  It quickly became apparent that Jani-King's fears were well warranted, as in the waning days of the Franchise Agreement, Darcy formed two new Florida businesses.

18.     Darcy formed J&R Facilities Support Services LLC ("J&R") on January 20, 2023. J&R's principal place of business is in Davie, Florida, which sits in Broward County (within the Territory), and its managers including Darcy and Ruben Garcia, the employee Jani-King had provided to assist with operations.[24] Darcy also formed Seminole Facilities Services LLC ("Seminole Facilities") on January 30, 2023. Its principal place of business is also in Davie, Florida (in the Territory), and its managers are also Darcy and Garcia.[25]  Perhaps most damning, despite the articles of incorporation of J&R and Seminole Facilities being filed on January 20th and 30th,

---

[21] *Id.* at p. 73-74. Jani-King received a letter in September 2022 from Seminole Cleaning indicating it was not intending to renew the Franchise Agreement, but this email from Darcy was the first time Jani-King learn that the Defendants intended to keep the business for themselves.

[22] *See* ECF No. 7 at p.3 (Ayres Decl. at ¶¶ 9-10).

[23] *See id.*

[24] ECF No. 1-4, p. 76-77.

[25] *Id.* at p. 79-80.

respectively, each was filed with an effective date of February 1, 2023—the exact day Darcy had just informed Jani-King that he would be taking all the business in house.

19.     Defendants, either through J&R, Seminole Facilities or otherwise, are providing commercial cleaning services to the Jani-King Accounts and diverting business away from Jani-King, violating the Franchise Agreement's noncompetition covenants.  Notably, since Jani-King's initiation of legal action over these breaches, Defendants have **never**—through counsel, pleadings, or otherwise—denied that they are operating or intending to operate competing commercial cleaning businesses in the Territory.  To the contrary, Defendants' actions and representations since Jani-King filed suit demonstrate that Jani-King's allegations regarding their conduct are accurate.

*Defendants' Violations of Non-Disclosure Provisions, TUTSA, and DTSA*

20.     Defendants have breached other key provisions of the Franchise Agreement, including Section 4.20.1 (prohibiting the communication or divulging of Confidential Information by Principals), 4.22 (barring the use of Jani-King's Proprietary Marks, Confidential Information, and the Jani-King System after the non-renewal of the Franchise Agreement and requiring their immediate return); and 4.23 (requiring the surrender of Jani-King property—including customer keys and contracts—after expiration of Franchise Agreement).  Each of these provisions is designed to protect Jani-King's Trade Secrets.

21.     Defendants are also in breach of Section 5.5 of the Franchise Agreement, which provides that all Jani-King property – including all materials, customer lists, processes, and concepts developed by the Franchisee, all of which are Jani-King's protectable Trade Secrets – always remain the property of Jani-King and must be returned immediately upon the expiration or termination of the Franchise Agreement.  Defendants have failed to return Jani-King's property

following the Franchise Agreement's expiration.  Their conduct constitutes both a breach of the Franchise Agreement and a violation of Texas and Federal trade secrets statutes.

## VENUE

22.    Venue is proper as the Franchise Agreement contains an exclusive venue-selection provision requiring all disputes to be heard in Dallas County. Federal law presumes that bargained for venue-selection provisions are valid and enforceable.

23.    Additionally, venue is proper in this Court based on venue in the state-court action that was pending at the time of removal and because a substantial part of the events or omissions giving rise to the claims at issue occurred in this district.[26]

## JURISDICTION

24.    Section 12.9 of the Franchise Agreement mandates jurisdiction in Dallas County:[27]

> 12.9.    THE PARTIES AGREE AND INTEND THIS INSTRUMENT TO BE EXECUTED, INTERPRETED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REFERENCE TO CONFLICT OF LAWS PRINCIPLES.  TEXAS LAW SHALL APPLY TO ALL CLAIMS, DISPUTES, AND DISAGREEMENTS BETWEEN THE PARTIES, WHETHER ARISING FROM ALLEGED BREACHES OF THE CONTRACT OR AGREEMENT OR OTHER CLAIMS ARISING IN ANY WAY FROM THE PARTIES' DEALINGS.  JURISDICTION AND VENUE IS DECLARED TO BE EXCLUSIVELY IN DALLAS COUNTY, IN THE STATE OF TEXAS.

While the Defendants are not signatories to the Franchise Agreement, they are bound by its terms under the "closely related parties" doctrine.  Premier is a member of Seminole Cleaning, Russell Leicht and John Darcy are managers of Seminole Cleaning, and Melodee Leicht is an owner/shareholder of Seminole Cleaning. Defendants are unquestionably "closely-related" to Seminole Cleaning and could easily foresee being bound by the Franchise Agreement.

---

[26] *See* 28 USC §§ 1441 & 1391(c)(2).

[27] ECF No. 1-4 at p, 50 § 12.9.

25.     Defendants are also bound to the Franchise Agreement under the doctrine of direct benefits estoppel.  This doctrine binds non-signatories who have embraced a contract but then, during litigation, attempt to avoid the contract.  It prevents non-signatories from having it both ways and attempting to benefit from one part of the contract while arguing they are not bound by other provisions of the contract.  Here, Defendants embraced the Franchise Agreement, received benefits under the Franchise Agreement, and are bound by the forum selection clause.

26.     This Court has subject matter jurisdiction over this matter pursuant to 28 USC § 1332(a) as the parties are completely diverse and the amount in controversy requirements have been met.

<u>CAUSES OF ACTION</u>

**A.     Breach of Contract**

27.      Jani-King and Defendants are bound by a valid and enforceable Franchise Agreement, and Jani-King performed its obligations under the Franchise Agreement.  By engaging in the conduct described herein, Defendants materially breached the Franchise Agreement.  Specifically, Defendants breached the Agreement by, at a minimum, directly engaging in a competitive business and diverting the Jani-King Accounts away from Jani-King. Defendants' breach of the Franchise Agreement has caused—and will continue to cause—injury to Jani-King, although damages are not readily ascertainable or measurable at this time.

**B.     Misappropriation of Trade Secrets Under Texas Uniform Trade Secrets Act (TUTSA) and Defend Trade Secrets Act (DTSA)**

28.     Both Texas and federal law define a trade secret subject to TUTSA's protection as all forms of information that: (1) the plaintiff has taken reasonable efforts to keep secret; and (2)

has actual or potential independent economic value to third parties because it is generally unknown and not readily ascertainable through proper means.[28]

29.    Jani-King owns confidential, proprietary, and trade secret information in the Jani-King System (which includes its customer lists, pricing information, client information, customer preferences, buyer contacts, market strategies, bidding sheets, business methods) and other Confidential Information and Proprietary Marks. These constitute Jani-King's Trade Secrets. Jani-King's Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means, by Jani-King's competitors. Jani-King has also taken reasonable efforts to protect its Trade Secrets from disclosure.[29] Accordingly, they are protected under TUTSA and DTSA.[30]

30.    The expiration of the Franchise Agreement terminated Defendants' rights and access to Jani-King's Trade Secrets. Defendants continued use of the Trade Secrets to improperly compete violates TUTSA and DTSA and warrants injunctive relief.[31]

### APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF

31.    Federal Rule of Civil Procedure 65 authorizes the issuance of preliminary injunctions to preserve the status quo pending a disposition on the merits.[32] The decision to issue an injunction lies within the district court's discretion.[33] In determining whether to exercise that discretion, courts consider four factors: (1) the movant's likelihood of success on the merits; (2) a

---

[28] *See* TEX. CIV. PRAC. & REM. CODE at §134A.002(6); 18 U.S.C. § 1839(3).

[29] *See, e.g.*, ECF NO. 1-4 at p. 41, § 5.2.2 ("Franchisee and the Principals agree to use all reasonable efforts to maintain as confidential the initial and ongoing, specialized training and Confidential Information.")

[30] *See* TEX. CIV. PRAC. & REM. CODE § 134A.002; 18 U.S.C. § 1839 et seq.

[31] *See* TEX. CIV. PRAC. & REM. CODE § 134A.003; 18 U.S.C. § 1836(b)(3)(A).

[32] Fed. R. Civ. P. 65(a)–(b); *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

[33] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008).

substantial threat of irreparable injury to the movant absent a preliminary injunction; (3) the balance of equities; and (4) the public interest.[34] Here, each of those factors weigh in favor of granting relief.

## A.    Prerequisites for Injunctive Relief

32.    All indispensable parties have been joined.

## B.    Jani-King is Likely to Prevail on its Breach of Contract and TUTSA Claims

33.    To satisfy this factor, the plaintiff must present a prima facie case but need not prove that it is entitled to summary judgment on its claim.[35] In fact, when "the other facts are strong, a showing of *some* likelihood of success on the merits will justify temporary injunctive relief."[36] Additionally, Jani-King only needs to show a likelihood of success for one of its claims.[37]

34.    Jani-King has demonstrated a likelihood of success on the merits of its claims. Defendants are engaging in commercial cleaning in the Territory during the Restricted Period and have made their plan to breach the noncompetition covenants abundantly clear. During the February 14, 2023 state court hearing on Jan-King's temporary restraining order, Defendants' attorneys—who at the time asserted they were *only* representing non-parties Seminole Cleaning and Seminole Tribe of Florida, Inc.—attempted to argue that if the Defendants were enjoined from cleaning the Jani-King Accounts, a public health crisis would ensure. In other words, Defendants' violation of the noncompetition provisions was confirmed in open court by their current counsel.

---

[34] *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

[35] *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013); *Janvey*, 647 F.3d at 595.

[36] *Productos Carnic, S.A. v. Cent. Am. Beef & Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980) (emphasis added).

[37] *See Frank Surveying Co., Inc. v. Harp*, No. 3:22-CV-2837-B, 2023 WL 172034, *3 (N.D. Tex. Jan. 11, 2023).

4874-7009-9286.1

35.     The Franchise Agreement is valid, has been assented to by each Defendant, and can be enforced against them. By signing the Amendment, Russell Leicht expressly assented to the terms of the Franchise Agreement.[38] Melodee Leicht did the same when signing the companion Operation Agreement.[39] Darcy demonstrated his assent to the terms of the Franchise Agreement on multiple counts, including his signing of Seminole Cleaning's reinstatement and by notifying Jani-King that Defendants would not be renewing the Franchise Agreement.[40] All of these specific facts, of course, merely buttress the fact that Defendants benefited from the Franchise Agreements for **ten years** but only now seek to avoid its existence.

36.     When a contract clearly evidences the parties' intent that individuals be bound by its terms, as the Franchise Agreement does regarding the Defendants who are each Principals, and those individuals then assent to the contract, they are bound by it. For example, in *Neel v. Tenet HealthSystem Hospitals Dallas,* the contract stated that "each and every person, firm, corporation, partnership, and association" comprising the "Tenant" would be liable for "performance of all the conditions and covenants binding on Tenant."[41] Where there was evidence the two doctors who owned the "Tenant" assented to the contract, they were held to be personally liable under its terms.[42]

37.     Similarly, here, the Franchise Agreement clearly defines "Principals" as the Franchisee's "owners, shareholders, members, officers, directors, and managers."[43] It also makes

---

[38] ECF No. 7 at APP008-11.

[39] *Id.* at APP012-20.

[40] ECF No. 1-4, at p. 63 & 73-74.

[41] *See Neel v. Tenet HealthSystem Hospitals Dallas, Inc.*, 378 S.W.3d 597, 600 (Tex. App.—Dallas 2012, pet. denied).

[42] *See id.* at 605-6.

[43] ECF No. 1-4 at p.26, § 4.2.3.

clear that the contracting parties intended to bind the Principals with specific regard to the noncompetition requirements, stating in that section of the Franchise Agreement that: "In consideration for the valuable initial and ongoing specialized training, and Confidential Information described above, **Franchisee and all of the Principals agree as follows**[.]"[44] The Franchise Agreement expressly demonstrates the contracting parties' intent that Defendants be bound to the noncompetition provisions, and Defendants each expressed their agreement. This was sufficient to bind the defendants in *Neel*, and it is sufficient to bind Defendants here.[45] The Defendants have breached the Franchise Agreement and Jani-King is likely to succeed on its breach-of-contract claim.

38.    The same is true regarding Jani-King's TUTSA and DTSA claims. To show a violation of TUTSA, Jani-King must show that: (1) a trade secret existed; (2) the trade secret was acquired through breach of a confidential relationship or appropriated by improper means; and (3) the Defendants used the trade secret without Jani-King's authorization. TUTSA and DTSA are functionally identical and required proof of the same elements.[46] Jani-King's Trade Secrets, consisting of the Jani-King System, Confidential Information, and trade secret information constitute "trade secrets" as defined under either statute.

39.    Jani-King's Trade Secrets are closely guarded and are not known outside the business; its employees and franchisees are required to keep its Trade Secrets confidential; Jani-King's agreements are specifically designed to protect its Trade Secrets; the Trade Secrets are **invaluable** given Jani-King's franchise-based business model and would be destructive if provided

---

[44] *Id.* at p.41, § 5.2.

[45] *See Neel*, 378 S.W.3d at 605-6.

[46] *See CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022); *see also M-I L.L.C. v. Q'Max Solutions, Inc.*, No. H-18-1099, 2019 WL 3565104, *3, n.21 (S.D. Tex. Aug. 6, 2019)

to Jani-King's competitors; Jani-King has expended extensive effort and funds developing its Trade Secrets over its fifty-plus year history; and the Trade Secrets could not be easily acquired or duplicated by others.

40.    Defendants have misappropriated Jani-King's trade secrets by acquiring them through improper means and are disclosing them without consent by continuing to service the Jani-King Accounts and using the Trade Secrets to do so. This misappropriation and disclosure justify injunctive relief.

**C.    Jani-King Will Suffer Immediate, Irreparable Harm in the Absence of a Preliminary Injunction**

41.    Defendants' violations of the noncompetition provisions of the Franchise Agreement will cause immediate and irreparable injury to Jani-King's business goodwill, competitive advantage, and customer relationships. A company's loss of goodwill, reputational injury, and interference with business relationships constitutes the type of irreparable harm for which injunctive relief is appropriate.[47]

42.    The same is true of Defendants' failure to comply with Section 4.20.1 (prohibiting the communication or divulging of Confidential Information by the Principals), 4.22 (use of the Jani-King's Proprietary Marks, Confidential Information, and the Jani-King System after the non-renewal of the Franchise Agreement and the failure to return same); 4.23 (surrender of Jani-King property—including customer keys and contracts—after expiration of Franchise Agreement); and 5.5 of the Franchise Agreement (all property of Jani-King, including all materials, customer lists,

---

[47] *See Amerispec, Inc. v. Metro Inspection Services, Inc.*, No. 3:01-CV-0946-D, 2001 WL 770999, *6 (("[I]n Texas, injury resulting from the breach of non-compete covenants is the epitome of irreparable injury") (emphasis added); *see also Tex. Dep't of State Health Servs. v. Holmes*, 294 S.W.3d 328, 334 (Tex. App.—Austin 2009, pet. denied) ("Irreparable harm for purposes of a temporary injunction may include non-compensable injuries such as a 'company's loss of goodwill, clientele, marketing technique, office stability and the like.'" (quoting *Graham v. Mary Kay, Inc.*, 25 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2000, pet. denied))).

-17-

processes, and concepts developed by the Franchisee, remains the property of Jani-King at all times, including after the expiration of the Franchise Agreement and must be returned to Jani-King). Such conduct constitutes TUTSA and DTSA violations which "cannot be undone by money alone."[48]

43.    Jani-King has no adequate remedy at law to compensate it for Defendants' breaches of the Franchise Agreement or misappropriation and disclosure of trade secrets. Because the harm is unknown and immeasurable at this time, Jani-King cannot be compensated by money damages for the losses it has incurred, and will continue to incur, by Defendants' unlawful competition, the diversion and solicitation of Jani-King's clients, and the misappropriation and disclosure of Jani-King's Trade Secrets.

44.    Unless this Court prohibits Defendants from unfairly competing with Jani-King and using and disclosing Jani-King's Trade Secrets, Jani-King will continue to suffer the injuries that the Franchise Agreement, TUTSA, and the DTSA are intended to safeguard against.

## D.    The Equities Weigh in Jani-King's Favor

45.    When deciding whether to grant a preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."[49] This Court has held that the equities support injunctive relief when a non-competition clause is violated, as the harm to Jani-King outweighs the potential harm to Defendants.[50] If Defendants are allowed to continue to violate their contractual

---

[48] *AHS Staffing, LLC v. Quest Staffing Group, Inc.*, 335 F. Supp. 3d 856, 873 (E.D. Tex. 2018) (finding that misappropriation of trade secrets was irreparable harm, justifying preliminary injunction).

[49] *AHS Staffing,* 335 F. Supp. 3d at 873 (quoting *Winter,* 555 U.S. at 24)).

[50] *See Champion Nat'l Sec., Inc. v. A&A Sec. Group, LLC*, No. 3:21-cv-00528-M, 2021 WL 1400979, at *6 (N.D. Tex. Apr. 13, 2021).

obligations, Jani-King will continue to suffer the irreparable loss of goodwill, reputational injury, and interference with its business relationships. Further, the incalculable harm faced by Jani-King through Defendants misappropriation and disclosure of its Trade Secrets far outweighs any potential harm to Defendants resulting from the issuance of injunctive relief.[51]

### E.    Enjoining the Defendants Serves the Public Interest

46.    Jani-King's requested injunction serves the public interest, as "it is in the public interest to uphold contracts and enforce valid [] agreements."[52] Further, an injunction addressing the misappropriation of Jani-King's Trade Secrets also "serves the public interest by further the purposes of the TUTSA" and the DTSA.[53]

### F.    Request for a Preliminary Injunction

47.    Jani-King requests that the Court issue a preliminary injunction, ordering that Defendants, their officers, agents, servants, employees, and attorneys, and those in active concert or participation with them, including but not limited to J&R Facilities Support Services LLC and Seminole Facilities Services LLC, be enjoined as follows until the trial of Jani-King's claims:

    a.    Diverting or attempting to divert to any competitor, by direct or indirect inducement or otherwise, any customer of Seminole Commercial Cleaning and Maintenance Services of Florida, LLC, Jani-King, or any other Jani-King franchisee, including, without limitation, the Jani-King Accounts;

---

[51] *See, e.g., See NRT Texas LLC v. Wilbur*, No. 4:22-cv-02847, 2022 WL 5434332, *11 (S.D. Tex. Sept. 7, 2022) (finding that enforcement of restrictive covenants and prevention of disclosure of trade secrets balances equities in favor of injunctive relief when it would merely require defendants to conduct business in a manner meeting their legal obligations); *Centurum Info. Tech., Inc. v. Geocent, LLC*, No. 21-0082, 2021 WL 533707, * (E.D. La. Feb. 12, 2021) ("Here, Centurum faces unquantifiable loss to its reputation, competitive edge, and loss of market share if a preliminary injunction is not issued to prevent the dissemination, use, and disclosure of its proprietary trade secrets. Defendants, on the other hand, do not face that degree of harm if an injunction were put into place.").

[52] *Brink's Inc. v. Patrick*, No. 3:14-cv-775, 2014 WL 2931824, at *9 (N.D. Tex. June 27, 2014).

[53] *See NRT Texas LLC v. Wilbur*, No. 4:22-cv-02847, 2022 WL 5434332, *11 (S.D. Tex. Sept. 7, 2022) (quoting *TFC Partners, Inc. v. Stratton Amenities, LLC*, 2019 WL 369152, *4 (W.D. Tex. Jan. 20, 2019))

b.    Employing, seeking to employ, or otherwise directly or indirectly inducing to leave their employment any person who is employed by or has been employed by Jani-King, or any of Jani-King's affiliated companies;

c.    Owning, maintaining, operating, engaging in, or having any interest in any business that provides commercial cleaning services within Broward, Dade, or Palm Beach Counties in the State of Florida, specifically including, without limitation, the provision of commercial cleaning services to the Jani-King Accounts;

d.    Communicating, divulging, or using for the benefit of any other person, persons, partnership, association, corporation, or other entity, any Confidential Information, Trade Secrets or any knowledge, techniques, or materials concerning the methods of operation of Jani-King;

e.    Copying, duplicating, recording, or otherwise making available the Confidential Information or Trade Secrets;

f.    Any use of the Proprietary Marks, Confidential Information, Trade Secrets, and all aspects of the Jani-King System; and

g.    Using or disclosing any of Jani-King's Trade Secrets in violation of TUTSA.

48.    Additionally, Jani-King would request the Court's injunction require that within

three (3) days of its issuance, Defendants:

a.    Return to Jani-King all advertising matter, products, and writings that contain Jani-King's Proprietary Marks, trade name, logo or copyright, as well as any Confidential Information;

b.    Deliver any access devices to any Jani-King customer's premises which have been serviced by Seminole Cleaning, including, but not limited to, keys, security passes, and codes;

c.    Surrender all Jani-King property, including all keys to Jani-King customers' buildings and all contracts related to the Jani-King accounts;

d.    Deliver to Jani-King all property belonging to Jani-King in Defendants' possession; and

e.    Returning all physical copies and materials constituting Jani-King Trade Secrets to Jani-King.

**G.    Request for a Preliminary Injunction & Permanent Injunctive Relief**

49.    Jani-King requests the imposition of a Preliminary Injunction.

50.     Finally, upon trial of these matters, Jani-King requests a Permanent Injunction enjoining Defendants from further breaches of the noncompetition provisions of the Franchise Agreement and further use of misappropriated Trade Secrets.

### EQUITABLE EXTENSION

51.     Jani-King seeks an equitable extension of the Restrictive Period for any time which the Court determines that Defendants were in breach of the Agreement.

### REFORMATION

52.     If the Court finds that Defendants' noncompetition obligations contained in the Agreement are unenforceable as written or overly broad, Jani-King requests that the Court reform those obligations in a manner it deems appropriate while maintaining those provisions as broadly as possible.

### BOND

53.     Jani-King is willing and able to post an appropriate bond.

### CONDITIONS PRECEDENT

54.     All conditions precedent to the prosecution of this suit have been performed, have occurred or have been waived.

### ATTORNEYS' FEES

55.     Pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code, Jani-King is entitled to an award of its reasonable and necessary attorneys' fees incurred in prosecuting this matter. Jani-King hereby seeks recovery of all such amounts from Defendants.

4874-7009-9286.1

**PRAYER**

Plaintiff Jani-King of Miami, Inc., prays that Defendants be cited to appear, and that the Court award the following relief:

a.      preliminary injunctive relief as set forth herein and as set forth in Jani-King's proposed preliminary injunction;

b.      permanent injunctive relief as requested herein;

c.      reasonable and necessary attorney's fees;

d.      all costs of court;

e.      post-judgment interest at the maximum recoverable rate allowed by law; and

f.      all other and further relief, both general and special, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

GRAY REED

By:     */s/ Skyler Y. Stuckey*
JONATHAN HYMAN
State Bar No.: 24032455
jhyman@grayreed.com
SKYLER Y. STUCKEY
State Bar No.: 24079411
sstuckey@grayreed.com

1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332

ATTORNEYS FOR PLAINTIFF

4874-7009-9286.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing motion has been served upon all parties pursuant to the Federal Rules of Civil Procedure on this 10th day of March, 2023.

*/s/ Skyler Y. Stuckey*

SKYLER Y. STUCKEY